IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DJUAN BROWN and<br>ALEXANDER ROBINSON,<br><br>Plaintiffs,<br><br>v.<br><br>P & H SERVICE, INC., d/b/a<br>AUTO SPA ETC., and<br>THREE SEVENS, INC., d/b/a<br>AUTO SPA ETC EXPRESS,<br><br>Serve each Defendant through:<br><br>Alicia M. Weaver<br>Registered Agent<br>8 Ellisville Towne Centr Dr.<br>Ellisville, MO 63011-4732<br><br>Defendants. | ) | Case No. |

**COMPLAINT**

COME NOW Plaintiffs Djuan Brown and Alexander Robinson, by and through counsel, and for their Complaint against Defendants P & H Service, Inc. and Three Sevens, Inc., state as follows:

1. This action seeks recovery of wages and tips that Defendants P & H Service, Inc. and Three Sevens, Inc. withheld from Plaintiffs and other nonexempt car wash employees through coordinated, improper timekeeping, labor cost, pay rate, and tip practices.

2. Defendants prevented employees from clocking in when customer volume was low, clocked employees out through management-controlled terminals while employees were working, before their work ended, required employees to remain at the worksite ready to serve the next customer without pay, and assigned productive work during periods excluded from payroll.

3. Defendants recorded tip amounts that employees did not report or receive and allowed managers and supervisors to retain gratuities generated through services that line workers performed or shared.

4. These practices reduced recorded hours and cash wages, understated overtime or left it unpaid, applied changing or deficient pay rates, inflated the tip credit Defendants claimed against the required minimum wage, reduced wages below the minimum wage, transferred employee tips to management, and produced records that did not accurately state time worked or compensation received.

5. Plaintiffs bring the federal wage claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219, for themselves and employees similarly situated who file written consents under 29 U.S.C. § 216(b).

6. Plaintiffs' executed Consent to Join forms under 29 U.S.C. § 216(b) are submitted with this Complaint and designated collectively as Exhibit 1.

7. Plaintiffs bring the Missouri statutory and common-law claims for themselves and the proposed Missouri Class under Federal Rule of Civil Procedure 23.

8. Joinder of Plaintiffs Brown and Robinson is proper under Federal Rule of Civil Procedure 20(a)(1) because they assert rights to relief jointly, severally, and in the alternative arising from the same transaction, occurrence, or series of transactions or occurrences, and common questions of law and fact arise in this action.

9. Both Plaintiffs worked at the same North Lindbergh car wash during overlapping periods, performed the same or similar nonexempt work, reported to the same management structure, and were subject to the same timekeeping system, labor cost policy, management-created punches, required on-site waiting, unpaid productive work, and practices described herein.

10. The named Plaintiffs' claims arise from the same recurring series of wage transactions and occurrences through which Defendants conditioned paid time on customer volume, excluded compensable time from payroll, used common records and management access, and paid from the resulting edited records.

11. Common questions include whether Defendants jointly employed Plaintiffs, whether the recurring waiting and productive time was compensable, whether Defendants' common timekeeping and payroll practices violated federal and Missouri law, whether Defendants acted willfully, and how the omitted time can be determined from common records and representative proof.

## I. PARTIES

12. Plaintiff Djuan Brown is an adult resident of the State of Missouri.

13. Plaintiff Brown worked for Defendants at their North Lindbergh car wash location in St. Louis County, Missouri.

14. Plaintiff Brown began his employment on November 5, 2025, and was employed during the events pleaded in this Complaint.

15. Plaintiff Alexander Robinson is an adult former employee of Defendants.

16. Plaintiff Robinson worked at Defendants' North Lindbergh location, first on the car wash line and later as a greeter.

17. Defendants terminated Plaintiff Robinson's employment in approximately June 2026.

18. Defendant P & H Service, Inc. is a Missouri domestic for profit corporation, Missouri Charter No. 00391022, with its principal and registered office at 8 Ellisville Towne Centr Dr, Ellisville, Missouri 63011-4732. It conducts business under the registered fictitious names “Auto Spa Etc” and “Auto Spa Etc.”

19. Defendant P & H Service, Inc. may be served through its registered agent, Alicia M. Weaver, at 8 Ellisville Towne Centr Dr, Ellisville, Missouri 63011-4732.

20. Defendant Three Sevens, Inc. is a Missouri corporation, Missouri Charter No. 00203107, with its registered office at 8 Ellisville Towne Centr Dr, Ellisville, Missouri 63011. It conducts business under the registered fictitious name Auto Spa Etc Express.

21. Defendant Three Sevens, Inc. may be served through its registered agent, Alicia M. Weaver, at 8 Ellisville Towne Centr Dr, Ellisville, Missouri 63011.

22. P & H Service, Inc. owns the registered Auto Spa Etc names, while Three Sevens, Inc. owns the registered Auto Spa Etc Express name. The corporations share a registered agent and registered office and conduct related car wash and convenience store operations under the Auto Spa brand.

23. Defendants presented and operated the locations within a common Auto Spa system, used common branding and operational methods, and jointly benefited from the labor performed at the North Lindbergh location.

24. Defendants jointly employed Plaintiffs and the similarly situated employees within the meanings of 29 U.S.C. § 203(d) and Mo. Rev. Stat. § 290.500(4).

25. Each Defendant, directly or indirectly and jointly with the other, possessed and exercised authority over the terms and conditions of Plaintiffs' employment.

26. Defendants jointly possessed and exercised the power to hire and discharge employees, set compensation, establish schedules, control assignments, supervise work, edit time records, administer payroll policies, establish tip practices, and maintain employment records.

27. Defendants acted through common owners, payroll personnel, site managers, supervisors, and agents who performed those functions in the interest of both corporations and the integrated Auto Spa operation.

28. The allocation of particular payroll, timekeeping, scheduling, operational, and recordkeeping functions between Defendants is reflected in records that Defendants jointly possess or control. Each Defendant is jointly and severally liable for the employment practices pleaded in this Complaint.

## II. JURISDICTION AND VENUE

29. This Court possesses federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims under the Fair Labor Standards Act.

30. This Court possesses supplemental jurisdiction over Plaintiffs' Missouri claims under 28 U.S.C. § 1367 because those claims arise from the same employment relationships, pay practices, time records, tip records, and course of conduct as the federal claims.

31. Each Defendant is subject to personal jurisdiction in Missouri because each is a Missouri corporation, continuously conducts business in Missouri, jointly employed Plaintiffs in Missouri, and committed the acts at issue in Missouri.

32. Venue is proper in the Eastern District of Missouri under 28 U.S.C. § 1391(b)(1) because both Defendants reside in this District.

33. Venue is independently proper under 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to the claims occurred at Defendants' St. Louis County worksite within this District.

34. Assignment to the Eastern Division is proper because Defendants' North Lindbergh worksite and the employment events at issue are located in St. Louis County.

35. During the relevant period, Defendants jointly employed at least 50 employees across their integrated multi-location operation.

36. Defendants' combined annual gross volume of sales made or business done equaled or exceeded $500,000 during each relevant year.

37. Defendants' employees handled customer vehicles, commercial cleaning products, equipment, supplies, point of sale systems, electronic payments, and other goods or instrumentalities that move in interstate commerce.

38. Defendants operated related activities through unified operation and common control for the common business purpose of providing car wash, detailing, convenience store, and related services.

39. Defendants together constituted an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), and each Defendant is an employer responsible for compliance with the FLSA.

40. Plaintiffs' regular work also involved the use of goods and instrumentalities that moved in interstate commerce.

41. Plaintiffs were paid hourly, performed manual and service work, exercised no managerial authority, and were nonexempt employees.

## III. FACTUAL BACKGROUND

### A. Plaintiff Brown's Hiring, Position, Duties, and Schedule

42. Defendants hired Plaintiff Brown as a car wash line worker in early November 2025. Defendants' records identified his position as a wash line position, and he commonly worked as a line washer.

43. Plaintiff Brown received vehicles after they passed through the wash, wiped exterior surfaces, cleaned windows, completed details, and prepared vehicles for customers. He also performed general cleaning, removed debris from pits beneath the car wash conveyor, and completed maintenance and closing work assigned by management.

44. Defendants promised Plaintiff Brown an hourly cash wage of $7.50 plus customer tips for each hour worked. They paid no salary or guaranteed compensation independent of hours worked and tips.

45. Plaintiff Brown initially worked full time, ordinarily from Friday through Tuesday, with Wednesday and Thursday off. He generally reported at approximately 8:00 a.m. and remained until approximately 4:00 p.m. or later, totaling 40 hours or more each workweek and 80 hours or more each two week pay period.

46. On many days, Plaintiff Brown worked until long after 4:00 pm.

47. Defendants did not provide regular, duty free meal or rest periods.

48. Plaintiff Brown's first two-week paycheck, approximately $459, was his largest. Later checks often fell to approximately $300 or less despite substantially more time on site than Defendants recorded.

49. Because the incomplete compensation did not meet his living expenses, Plaintiff Brown later obtained another job and reduced his availability. That change neither remedied the unpaid time nor stopped the practices during his part-time schedule.

**B. Plaintiff Robinson's Employment, Compensation, and Unpaid Work**

50. Defendants applied the practices to Plaintiffs and other North Lindbergh line workers. Plaintiffs identified approximately eight to 11 affected employees working at this location during any given workweek.

51. The affected workers wiped and detailed vehicles and remained available during slow customer traffic.

52. Plaintiff Robinson worked on Defendants' car wash line and later as a greeter. Defendants prohibited him from remaining clocked in when no customer vehicles were present, although he remained waiting for the next customer.

53. When Plaintiff Robinson became a greeter, Defendants promised hourly compensation for every hour worked. Plaintiff Robinson understood that the position paid $15.00 per hour. His paystubs instead listed $15.00 during some periods and $10.30 during others, including weeks when he sold additional services to customers.

54. During the relevant period, Plaintiff Robinson ordinarily worked Saturday through Wednesday and was off Thursday and Friday.

55. Eleven paystubs with pay dates from January 9, 2026, through May 29, 2026, identify Plaintiff Robinson's department as Auto Spa Etc Florissant and report compensation under changing classifications that include CV Greeter, Car Line, Greeter X, Meeting, and Tips.

56. The January 9, 2026 paystub lists CV Greeter work at $10.30 per hour for 41.48 recorded hours and a separate $154.14 Greeter X amount. Later paystubs list a $15.00 CV Greeter rate and a $7.50 Car Line rate, along with separate tip or lump-sum entries.

57. The changing payroll classifications, hourly rates, and separate entries corroborate Defendants' control over position coding, rates, hours, and tip reporting. The recorded hours also fluctuated materially despite Plaintiff Robinson's recurring Saturday-through-Wednesday schedule and the shutdown, cleaning, and maintenance work he performed outside paid time.

58. Plaintiff Robinson asked a manager whether his hourly rate was supposed to change. The manager confirmed that the rate should remain constant but stated that the rate should be $12.12 per hour.

59. Plaintiff Robinson observed managers at the computer clocking workers out immediately after the last vehicle, sometimes before they could reach the terminal. He estimated that the practice removed approximately 20 hours from his records during some weeks.

60. Plaintiff Robinson was commonly scheduled until 6:30 p.m., clocked out at approximately 5:45 p.m., and required to remain to shut down operations for the day.

61. Defendants also required Plaintiff Robinson to clean the pit without pay and repair equipment outside paid time so the car wash could resume operating.

62. Plaintiff Robinson's experience corroborates the required waiting, management-created punches, pit cleaning, maintenance, and uncompensated shutdown duties that Plaintiff Brown described.

63. Plaintiffs' experiences reflect a common practice of Defendants, and Defendants' schedules, audit logs, labor reports, tip sheets, surveillance, and payroll records provide common proof in relation to such conduct.

**C. Defendants' Labor Cost Policy and Management Control**

64. Defendants monitored a labor use ratio comparing recorded labor time with customer vehicles and treated employee time as excessive when customer volume did not produce management's desired ratio.

65. Defendants directed site management to reduce recorded labor during slow periods. Managers did so by preventing line workers from clocking in, clocking them out through management-controlled terminals, and leaving them off the clock until another customer arrived.

66. Defendants neither closed the worksite nor released the affected employees. They kept them available to serve the next vehicle immediately without paying for the intervening time.

67. Plaintiff Brown specifically asked why the owner wanted employees clocked out and whether the practice sought to maintain a particular price point. A management representative explained that labor became high when the location lacked enough cars and that keeping employees clocked in would cause the location to run high on labor. From the company’s perspective, the practice addressed labor cost and the ratio of recorded labor to customer vehicles.

68. That practice also occurred during rain, snow, and slow traffic as Defendants' labor control method.

69. Managers and payroll personnel possessed the system access needed to implement the practice. Managers observed the waiting workers, directed their work, knew when vehicles required service, and accepted their readiness and labor while excluding the time from payroll.

**D. Defendants' Timekeeping System and Management Created Punches**

70. Defendants used an electronic timekeeping system with approximately three workplace terminals. Employees ordinarily clocked in upon arrival and out after completing work.

71. Managers had separate access to clock employees in or out and to alter their records. They repeatedly exercised that access without employee confirmation.

72. Plaintiffs discovered management created clock outs when they later attempted to use a terminal and found the system already listed them as off the clock.

73. Managers sometimes waited near a terminal and clocked workers out when the last vehicle left, before employees completed related cleanup, shutdown, and operational tasks.

74. Defendants also refused or disabled clock ins when scheduled employees arrived during low customer volume. A denied clock in or management created clock out did not mean Defendants told the employee to leave or relieved the employee of work.

75. Because management toggled an employee's paid status as vehicles arrived and departed, the system could display multiple paid intervals in one day.

76. That cycle of a management created clock out, unpaid waiting or work, and a later clock in recurred throughout the workday. Management attributed the practice to the owner's direction to watch labor.

77. Defendants controlled the native punches, edit histories, manager credentials, schedules, labor use reports, and payroll calculations. Employee receipts showed only the intervals ultimately paid, not who created or changed each punch.

78. The practice omitted compensable time and rendered Defendants' payroll records incomplete and unreliable.

**E. Required On Site Waiting Time**

79. During customer slowdowns, Defendants required Plaintiffs and other line workers to remain at the car wash and resume service when the next vehicle arrived.

80. The employees could not predict the next customer's arrival. Defendants provided no definite off duty period or return time, did not completely relieve them of duty, and did not grant unrestricted permission to leave and use the intervals for personal purposes.

81. The workers remained subject to immediate direction. Depending on customer traffic, the unannounced intervals could last five minutes, 29 minutes, 48 minutes, or another uncertain duration.

82. Defendants thereby maintained a ready workforce without releasing and recalling employees. The unpredictable intervals could not reasonably be used for personal purposes.

83. Plaintiff Brown recorded himself at the worksite during one interval when no cars were present and the system listed him as clocked out. He stated that he was not on lunch, a 15-minute break, or any other break.

84. Plaintiffs are aware of and document multiple, repeating occurrences documenting multiple employees off the clock while the location remained open.

85. The common waiting time practice arose from the labor ratio rule, benefited Defendants, and constituted work they suffered or permitted.

**F. Productive Work Performed Outside Recorded Time**

86. During excluded intervals, Defendants required line workers to wipe and detail vehicles and clean windows, work areas, equipment, and the facility.

87. Workers also removed water, mud, trash, and debris from pits beneath the conveyor, physically demanding work that maintained the equipment and permitted operations.

88. Plaintiff Brown cleaned a pit alone on a rainy day while off the clock. Plaintiff Robinson also cleaned the pit without pay and repaired equipment outside paid time so the car

wash could resume operating. Management assigned, observed, or accepted that work at Defendants' facility.

89. Employees also remained after management created clock outs to shut down the line and performed repair and maintenance work outside recorded time so the wash could continue or resume operating.

90. Management created punches did not stop the work Defendants required or accepted. It occurred openly under managers who controlled the records, and Defendants retained the benefit of that work without paying all time spent.

**G. Plaintiff Brown's Contemporaneous Punch Records**

91. Plaintiff Brown preserved a punch receipt for the workweek beginning April 20, 2026.

92. For April 20, 2026, the receipt listed intervals from 8:18 a.m. to 11:57 a.m., 12:50 p.m. to 12:55 p.m., and 1:24 p.m. to 2:12 p.m., crediting only 4.53 hours despite Plaintiff Brown's presence and work during this continuous workday.

93. The five-minute interval illustrates that Defendants toggled paid status with customer volume rather than providing a genuine off duty period and without regard to what is considered time worked.

94. The receipt credited 6.30 hours from 8:15 a.m. to 2:33 p.m. on April 21, 2026; 4.25 hours from 8:07 a.m. to 12:22 p.m. on April 22, 2026; 7.97 hours from 7:59 a.m. to 3:57 p.m. on April 25, 2026; and 5.22 hours after a 9:01 a.m. start on April 26, 2026.

95. The receipt reported only 28.27 paid hours for the workweek, although Plaintiff Brown worked 40 hours and more per workweek, omitting substantial waiting and productive time.

96. A labor use screen photographed at approximately 10:38 a.m. on April 20 did not show Plaintiff Brown clocked in, although the later receipt credited an 8:18 a.m. start time.

97. Plaintiff Brown preserved another receipt dated April 28, 2026. Although he arrived at approximately 8:00 a.m., Defendants did not permit him to clock in until 10:40 a.m. Plaintiff Brown remained on the premises and ready to serve customers during the intervening two hours and 40 minutes. The receipt listed a 1:06 p.m. punch out and credited only 2.43 hours worked. Plaintiff Brown arrived at 8:00 a.m., left at approximately 1:00 p.m., and received approximately two recorded hours.

98. A July 30, 2026 punch receipt recorded Plaintiff Brown from 8:11 a.m. to 11:59 a.m. and from 12:57 p.m. to 2:20 p.m., for only 5.18 paid hours that day. The same receipt listed only 9.42 total hours for the workweek, further documenting the segmented time and small number of paid hours Defendants recorded for Plaintiff Brown.

99. The same policy and mechanisms of Defendants affected other days for which Defendants retain schedules, punches, edits, video, and payroll data.

**H. Defendants' Tip Practices**

100. Defendants treated Plaintiff Brown and other line workers as tipped hourly employees. Defendants agreed to pay Plaintiff Brown $7.50 for every hour of required, permitted, or accepted work, plus customer tips.

101. During 2026, the cash wages paid to Plaintiff Brown were less than Missouri's $15.00 minimum wage. Defendants therefore relied on valid tips actually received and retained to satisfy the remaining minimum wage.

102. Defendants did not accurately determine the actual tips received by Plaintiff Brown. Managers entered or substituted amounts on tip sheets that employees did not supply, verify, approve, or receive.

103. Defendants assigned daily or periodic tip amounts to Plaintiff Brown, including amounts of approximately $200, $300, or $400, that did not reflect the tips he actually received, and assigned similar unverified amounts to other line workers.

104. Defendants recorded company selected figures of approximately $200, $300, or more for a two-week period, including periods when rain substantially reduced customer tips. Those figures did not reflect tips actually received and created the illusion of wage and hour compliance.

105. Those entries inflated payroll and tax records, treated unreceived money as compensation, obscured a lack of minimum wage compliance, and increased taxable income without providing the money to Plaintiffs.

106. Managers and supervisors also joined vehicle wiping and washing work and retained gratuities that line workers generated or helped generate. Plaintiff Brown observed that conduct, and Plaintiff Brown recorded managers cleaning customer vehicles during the relevant period.

107. The retained gratuities were not limited to services managers directly and solely performed. Defendants did not return such tips to affected workers.

108. These practices caused lost tips and compensation shortfalls and defeated any lawful tip credit.

**I. Overtime Consequences**

109. Plaintiffs were nonexempt and entitled to overtime compensation after 40 hours in a workweek. The ordinary full-time schedule and actual hours worked by Plaintiff Brown reached or exceeded 40 hours before accounting for work beyond scheduled shifts.

110. Deleted time caused payroll to report fewer than 40 hours when a Plaintiff's compensable time reached or exceeded 40. Defendants paid from edited records without paying one and one-half times the regular rate for all overtime hours worked.

111. Defendants also failed to calculate tipped overtime from the full minimum wage and lawful tip credit. Their two-week payroll cycle did not excuse separate calculations for each fixed workweek.

**J. Defendants' Knowledge, Willfulness, and Inaccurate Records**

112. Defendants knew workers remained on site during excluded intervals because managers controlled the clock outs, remained present, and expected immediate service when another vehicle arrived.

113. Defendants knew employees performed productive work outside recorded time because managers assigned, observed, and accepted it.

114. Defendants knew management created tip amounts did not come from employees and knew managers participated in tip producing services and retained gratuities because those acts occurred openly.

115. Defendants had actual notice that employees challenged the management created clock outs, unpaid time, and inaccurate tip records. Defendants nevertheless continue the challenged clock-out practices, including by clocking Plaintiffs out without notice.

116. Defendants' stated labor cost rationale confirms that omitting time served a deliberate business objective.

117. Defendants controlled schedules, labor displays, receipts, edit logs, traffic data, and surveillance showing workers present and performing services outside paid intervals.

118. Defendants failed to maintain accurate daily and weekly hours, actual tips, lawful tip credits, regular rates, and total wages due.

119. Defendants acted willfully because they knew the facts establishing their wage obligations and knew their practices violated the law or recklessly disregarded that possibility.

120. Defendants lacked subjective good faith and objectively reasonable grounds for withholding the wages, overtime, and tips at issue.

**K. Resulting Losses**

121. Plaintiffs and similarly situated workers lost cash wages for omitted waiting and work, minimum wages when compensation and retained tips fell below the applicable rate,

overtime when omitted time pushed weekly hours above 40, tips retained by management, and wages lost through improper tip credits.

122. They also lost promised straight time compensation for compensable hours that did not independently create a statutory minimum wage or overtime shortfall.

123. Plaintiffs cannot calculate the full amount without Defendants' native timekeeping data, schedules, payroll and tip records, point of sale data, and surveillance. Defendants' recordkeeping violations created that uncertainty and should not allow them to benefit from missing precise records.

124. Plaintiffs seek amounts proven through a just and reasonable inference from available records and testimony, subject to Defendants' opportunity to produce precise and accurate evidence to the contrary.

## IV. FLSA COLLECTIVE ACTION ALLEGATIONS

125. Plaintiffs bring the FLSA wage claims under 29 U.S.C. § 216(b) for themselves and all employees similarly situated who timely file written consents.

126. The proposed Off the Clock Collective consists of all current and former nonexempt car wash line workers, line washers, greeters, detail workers, and employees performing similar work at Defendants' North Lindbergh location during the three years preceding the filing of this action through final judgment who were prevented from clocking in, clocked out by management, required to wait on site, or required to perform productive work outside recorded time.

127. The proposed Tip Collective consists of all current and former nonexempt tipped employees at Defendants' North Lindbergh location during the three years preceding the filing of this action through final judgment whose tips Defendants inaccurately recorded, whose tips managers or supervisors retained, or for whom Defendants claimed a tip credit unsupported by actual tips received and retained.

128. Plaintiffs and the collective members performed the same or similar nonexempt car wash and customer service work.

129. They worked at the same location under common ownership, management, payroll administration, timekeeping systems, labor ratio expectations, and tip practices.

130. They were subject to the same practice of conditioning recorded time on customer volume rather than all compensable work and required waiting.

131. They were subject to the same management access that permitted supervisors to create clock outs and prevent or delay clock ins.

132. They were subject to the same practice of assigning work, including cleaning, maintenance, repair, and shutdown tasks, during time excluded from payroll.

133. They were subject to common methods for recording tips, applying tip credits, and allowing management participation in tip generating work.

134. Common evidence includes the electronic audit logs, schedules, labor use reports, customer traffic data, surveillance, payroll registers, tip sheets, point of sale records, policies, and testimony of managers and coworkers.

135. The principal liability questions concern Defendants' common practices rather than any unique agreement with a named Plaintiff.

136. Individual differences in the amount of time or tips affect damages but do not alter whether the challenged practices violated the FLSA.

137. Plaintiffs' documented time gaps, recordings, duties, pay methods, payroll records, and off-the-clock work are representative of the Off the Clock Collective. The tip records and experiences of Plaintiff Brown are representative of the Tip Collective.

138. Plaintiffs will fairly and adequately represent the collective members and possess no interest antagonistic to them.

139. Plaintiffs' counsel regularly litigates wage and hour and representative employment actions and will adequately protect the collective members' interests.

140. Court-authorized notice is necessary to advise similarly situated employees of the action and their opportunity to file written consents before their limitations periods expire.

141. Defendants possess the names, last known addresses, telephone numbers, email addresses, employment dates, positions, and other information needed to provide effective notice.

## V. RULE 23 MISSOURI CLASS ALLEGATIONS

142. Plaintiffs bring the Missouri statutory and common law claims under Federal Rules of Civil Procedure 23(a) and 23(b)(3).

143. The proposed Missouri Wage Class consists of all current and former nonexempt employees who worked at Defendants' North Lindbergh location during the three years preceding the filing of this action through final judgment and who were prevented from clocking in, clocked out by management, required to wait or work outside recorded time, denied required minimum or overtime wages, assigned inaccurate tip amounts, deprived of tips, or denied promised straight time compensation.

144. The precise number of class members is within Defendants' control and can be determined from their personnel, schedule, timekeeping, and payroll records.

145. The location also experienced substantial turnover, including short-term employees whose recorded hours or paychecks did not reflect their work. Turnover across the full three-year class period undoubtedly increases the class beyond 40 members.

146. Joinder is impracticable because the claims concern relatively modest individual wage amounts, class members include current low-wage employees who depend on Defendants for work, and the identities and addresses of former employees remain within Defendants' control.

147. Questions common to the class include whether Defendants conditioned paid time on customer volume, required employees to remain available during clocked-out intervals, used management-created punches, assigned productive work outside paid time, maintained inaccurate records, recorded unreceived tips, allowed managers to retain tips, miscalculated minimum wages, failed to pay overtime after 40 actual hours worked, promised hourly compensation for each hour worked, and breached those promises by excluding hours from payroll.

148. Plaintiffs' claims are typical because Defendants subjected them to the same practices and their claims arise from the same course of conduct as the class members' claims.

149. Plaintiffs will fairly and adequately protect the class because they seek the same unpaid compensation and statutory remedies and possess no conflict with the class.

150. Plaintiffs' counsel possesses substantial experience litigating wage and hour claims, class actions, and other complex employment matters.

151. Common questions predominate because Defendants' standardized systems, manager authority, labor policy, and payroll methods determine liability for the class.

152. A class action is superior because it permits consistent adjudication from common records, reduces the cost of numerous small claims, protects workers who may fear individual action, and avoids duplicative proceedings.

153. Class treatment will remain manageable through Defendants' electronic data, representative proof, workweek calculations, and a claims process if the Court determines one is appropriate.

154. Plaintiffs request certification of the Missouri Wage Class, appointment as class representatives, appointment of counsel as class counsel, and the best notice practicable to class members.

## COUNT I

### FAIR LABOR STANDARDS ACT — UNPAID MINIMUM WAGES

155. Plaintiffs repeat and reallege the above stated paragraphs as if fully set forth herein.

156. The FLSA required Defendants to pay Plaintiffs and the Off the Clock Collective at least the federal minimum wage for every compensable hour worked.

157. Defendants suffered or permitted work when they required employees to remain ready at their premises, assigned productive tasks, or accepted services outside the intervals recorded in payroll.

158. Defendants knew or should have known of that work because management created the clock outs, prevented clock ins, supervised the employees, assigned the tasks, and observed the employees at the worksite.

159. Defendants' payment of cash wages only for edited recorded hours did not compensate the omitted hours.

160. When total cash wages and actual lawful tips are divided by all compensable hours in affected workweeks, Plaintiffs' and collective members' compensation fell below the federal minimum wage in multiple workweeks.

161. Defendants also failed to satisfy the federal tip credit requirements when they relied on tips employees did not receive and retain and did not provide all required tip credit information.

162. Defendants violated 29 U.S.C. §§ 206 and 215(a)(2).

163. Defendants' violation was willful and was not supported by good faith or objectively reasonable grounds.

WHEREFORE, Plaintiffs, for themselves and the FLSA collective members who file written consents, respectfully request judgment against Defendants, jointly and severally,

awarding all unpaid federal minimum wages; an equal amount as liquidated damages under 29 U.S.C. § 216(b); conditional and final certification of the applicable collective; court-authorized notice and disclosure of contact information; a declaration that Defendants violated the FLSA's minimum wage requirements; prejudgment and postjudgment interest; reasonable attorney fees and costs; incentive payments for Plaintiffs for their service as the named Plaintiffs, subject to Court approval; and all other authorized relief.

## COUNT II

## FAIR LABOR STANDARDS ACT — UNPAID OVERTIME

164. Plaintiffs repeat and reallege the above stated paragraphs as if fully set forth herein.

165. Plaintiffs and the Off the Clock Collective were nonexempt employees entitled to overtime compensation for hours worked over 40 in a workweek.

166. The required waiting time and productive work omitted from Defendants' time records count toward the weekly overtime threshold.

167. Defendants failed to add that omitted time to the hours they recorded and paid.

168. Defendants therefore failed to pay one and one-half times the regular rate for all hours worked over 40.

169. For tipped overtime, Defendants also failed to calculate the overtime rate from the full applicable minimum wage and a lawful, limited tip credit.

170. Defendants violated 29 U.S.C. §§ 207 and 215(a)(2).

171. Defendants' violation was willful and was not supported by good faith or objectively reasonable grounds.

WHEREFORE, Plaintiffs, for themselves and the FLSA collective members who file written consents, respectfully request judgment against Defendants, jointly and severally, awarding all unpaid overtime compensation calculated from the proper regular rate; an equal

amount as liquidated damages under 29 U.S.C. § 216(b); conditional and final certification of the applicable collective; court-authorized notice and disclosure of contact information; a declaration that Defendants violated the FLSA's overtime requirements; prejudgment and postjudgment interest; reasonable attorney fees and costs; incentive payments for Plaintiffs for their service as the named Plaintiffs, subject to Court approval; and all other authorized relief.

## COUNT III

### FAIR LABOR STANDARDS ACT — UNLAWFULLY RETAINED TIPS

172. Plaintiff Brown repeats and realleges the above stated paragraphs as if fully set forth herein.

173. Plaintiff Brown, together with the Tip Collective, received gratuities from customers as part of their compensation.

174. The FLSA prohibited Defendants, including their managers and supervisors, from keeping employee tips for any purpose.

175. Defendants permitted managers and supervisors to retain tips generated through services that Plaintiff Brown and other line workers performed or shared.

176. Those gratuities did not fall within the limited exception for a tip given for service directly and solely provided by a manager or supervisor.

177. Defendants also claimed or benefited from a tip credit based on inaccurate tip records that employees did not create, verify, or receive.

178. Defendants failed to return all unlawfully kept tips and the resulting unlawful tip credit to the affected employees.

179. Defendants violated 29 U.S.C. § 203(m)(2)(B).

180. Defendants' violation was willful.

WHEREFORE, Plaintiff Brown, for himself and the FLSA collective members who file written consents, respectfully requests judgment against Defendants, jointly and severally,

awarding the sum of every unlawful tip credit Defendants took and all tips Defendants, their managers, or their supervisors unlawfully kept; an additional equal amount as liquidated damages under 29 U.S.C. § 216(b); conditional and final certification of the Tip Collective; court-authorized notice and disclosure of contact information; a declaration that Defendants violated 29 U.S.C. § 203(m)(2)(B); prejudgment and postjudgment interest; reasonable attorney fees and costs; incentive payments for Plaintiffs for their service as the named Plaintiffs, subject to Court approval; and all other authorized relief.

## COUNT IV

## MISSOURI MINIMUM WAGE LAW —
## MINIMUM WAGES AND TIP CREDIT DEFICIENCIES

181. Plaintiffs repeat and reallege the above stated paragraphs as if fully set forth herein.

182. The Missouri Minimum Wage Law required Defendants to pay Plaintiffs and the Missouri Wage Class at least $13.75 per compensable hour during 2025 and at least $15.00 per compensable hour beginning January 1, 2026.

183. Missouri law permitted Defendants to pay a tipped employee no less than 50 percent of the state minimum wage only when the employee actually received and retained gratuities and total compensation reached the full minimum wage.

184. Defendants paid Plaintiff Brown $7.50 in cash for only the hours Defendants recorded, and paid Plaintiff Robinson at rates that varied as low as $10.30 per recorded hour during 2026. Defendants did not pay any Plaintiff for all compensable waiting and productive time.

185. Defendants used tip amounts that employees did not report, receive, or retain.

186. Defendants did not make up the difference when actual cash wages and actual retained tips failed to equal the Missouri minimum wage for all compensable hours.

187. Defendants' manager created time records and inaccurate tip records caused additional minimum wage deficiencies across the Missouri Wage Class.

188. Defendants paid Plaintiffs and the Missouri Wage Class less than the wages to which they were entitled under Mo. Rev. Stat. §§ 290.500–290.530.

189. Defendants are liable under Mo. Rev. Stat. § 290.527 for the full amount of unpaid statutory wages and an additional amount equal to twice the unpaid wages.

190. Defendants' violations occurred within Missouri and within the statutory limitations period.

WHEREFORE, Plaintiffs, individually and for the Missouri Wage Class, respectfully request judgment against Defendants, jointly and severally, awarding the full amount of unpaid Missouri minimum wages and tip credit deficiencies; the additional amount equal to twice the unpaid wages required by Mo. Rev. Stat. § 290.527; certification of the Missouri Wage Class under Rule 23; class notice and appropriate administration; a declaration that Defendants violated Missouri's minimum wage and gratuity requirements; prejudgment and postjudgment interest; reasonable attorney fees and costs; incentive payments for Plaintiffs for their service as the named Plaintiffs, subject to Court approval; and all other authorized relief.

**COUNT V**

**MISSOURI MINIMUM WAGE LAW — UNPAID OVERTIME**

191. Plaintiffs repeat and reallege the above stated paragraphs as if fully set forth herein.

192. The Missouri Minimum Wage Law required Defendants to pay Plaintiffs and the Missouri Wage Class one and one-half times the regular rate for all hours worked over 40 in a workweek.

193. The required waiting and productive time omitted from Defendants' records counts toward the 40-hour threshold.

194. Defendants failed to include that time when determining whether Plaintiffs and class members worked overtime.

195. Defendants failed to pay the overtime wages due after the omitted time is added to each affected workweek.

196. Defendants also failed to use the full applicable minimum wage and lawful tip credit when calculating tipped overtime.

197. Defendants paid Plaintiffs and the Missouri Wage Class less overtime compensation than Mo. Rev. Stat. § 290.505 required.

198. Defendants are liable under Mo. Rev. Stat. § 290.527 for the full amount of unpaid overtime wages and an additional amount equal to twice the unpaid wages.

199. Defendants' violations occurred within Missouri and within the statutory limitations period.

WHEREFORE, Plaintiffs, individually and for the Missouri Wage Class, respectfully request judgment against Defendants, jointly and severally, awarding the full amount of unpaid Missouri overtime compensation calculated from each employee's proper regular rate; the additional amount equal to twice the unpaid overtime required by Mo. Rev. Stat. § 290.527; certification of the Missouri Wage Class under Rule 23; class notice and appropriate administration; a declaration that Defendants violated Missouri's overtime requirement; prejudgment and postjudgment interest; reasonable attorney fees and costs; incentive payments for Plaintiffs for their service as the named Plaintiffs, subject to Court approval; and all other authorized relief.

## COUNT VI

## BREACH OF CONTRACT

200. Plaintiffs repeat and reallege the above stated paragraphs as if fully set forth herein.

201. This Count seeks damages for promised hourly compensation earned through completed work and not fully remedied as a statutory minimum wage or overtime deficiency.

202. Defendants offered to pay Plaintiff Brown an hourly cash wage of $7.50 plus tips for his services. Defendants offered to pay Plaintiff Robinson the hourly rate applicable to his assigned position for each hour worked. For Robinson's greeter work, Defendants' records and management representations identify hourly rates of $15.00 and $12.12, while Defendants sometimes paid only $10.30.

203. Plaintiffs accepted Defendants' hourly compensation offers by reporting as scheduled, remaining available under Defendants' control, and performing the services Defendants directed, required, permitted, or accepted.

204. Missouri law recognizes that at will employment creates an express or implied promise that, if the employee performs work as directed, the employer will pay for that work. *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 26 (Mo. App. W.D. 2008).

205. The absence of a guaranteed duration of employment does not eliminate the legally enforceable promise to pay compensation already earned for work actually performed.

206. For hourly employees, Defendants' promise to pay an identified hourly rate is measured by all hours of work Defendants directed, required, suffered, permitted, or accepted, not merely the hours management ultimately left in edited payroll records.

207. Each hour Plaintiffs worked in response to Defendants' offers constituted performance, supplied consideration, and made Defendants' promise to pay the applicable hourly rate enforceable for that completed hour.

208. Defendants breached their hourly compensation promises by failing to pay Plaintiffs for required waiting, productive work, cleaning, repair, maintenance, and shutdown time that management excluded from payroll; by substituting unreceived tip amounts for compensation promised to Plaintiff Brown; and by paying Plaintiff Robinson at inconsistent rates below the rate Defendants represented as applicable.

209. Plaintiffs and the members of the Missouri Wage Class sustained damages equal to the promised hourly compensation due for their uncompensated straight time work, plus promised tips where applicable, less any overlapping statutory recovery.

210. The unpaid compensation can be determined from Defendants' schedules, timekeeping records, native punches, audit logs, payroll records, rate records, tip records, surveillance, and representative proof of work performed.

WHEREFORE, Plaintiffs, individually and for the Missouri Wage Class, respectfully request judgment against Defendants, jointly and severally, awarding the unpaid straight-time cash wages and promised tips due; prejudgment and postjudgment interest; taxable costs; certification and administration of a contract class; incentive payments for Plaintiffs for their service as the named Plaintiffs, subject to Court approval; and all other relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues for which a jury trial is available.

Respectfully submitted,

By: */s/ Kevin J. Dolley*

S. Cody Reinberg, MO 66174
HKM Employment Attorneys LLP
7382 Pershing Avenue, Suite 1W
St. Louis, Missouri 63130
Telephone/Fax: (314) 391-9557
creinberg@hkm.com

Kevin J. Dolley, #54132MO
HKM Employment Attorneys LLP
7382 Pershing Avenue, Suite 1W
St. Louis, Missouri 63130
Telephone/Fax: (314) 642-6577
kdolley@hkm.com

*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EXHIBIT
1

| | | |
|---|---|---|
| DJUAN BROWN and<br>ALEXANDER ROBINSON,<br><br>Plaintiffs,<br><br>v.<br><br>P & H SERVICE, INC., d/b/a AUTO SPA ETC.,<br>and THREE SEVENS, INC., d/b/a<br>AUTO SPA ETC EXPRESS,<br><br>Defendants. | ) | Case No. |

**CONSENT TO JOIN**

1. I consent to make a claim as a party plaintiff and/or opt-in plaintiff in the lawsuit against Defendants P & H Service, Inc., d/b/a Auto Spa Etc., and Three Sevens, Inc., d/b/a Auto Spa Etc Express, captioned *Brown v. P & H Service, Inc.*, to seek relief for alleged violations of the Fair Labor Standards Act pursuant to 29 U.S.C. § 216(b) and any other related claims.

2. I designate S. Cody Reinberg, Kevin J. Dolley, HKM Employment Attorneys LLP, any attorneys they may designate, and the collective representatives to represent me in bringing this claim and to make decisions on my behalf concerning the litigation and settlement. I agree to be bound by any adjudication or settlement of this action by the Court, whether favorable or unfavorable.

Date: November 7, 2026

Signature: Djuan Brown

Print Name: Djuan Brown

**Information below will be redacted in filings with the Court. Please print or type.**

[redacted]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DJUAN BROWN and
ALEXANDER ROBINSON,

Plaintiffs,

v.

P & H SERVICE, INC., d/b/a AUTO SPA ETC.,
and THREE SEVENS, INC., d/b/a
AUTO SPA ETC EXPRESS,

Defendants.

Case No.

**CONSENT TO JOIN**

1. I consent to make a claim as a party plaintiff and/or opt-in plaintiff in the lawsuit against Defendants P & H Service, Inc., d/b/a Auto Spa Etc., and Three Sevens, Inc., d/b/a Auto Spa Etc Express, captioned *Brown v. P & H Service, Inc.*, to seek relief for alleged violations of the Fair Labor Standards Act pursuant to 29 U.S.C. § 216(b) and any other related claims.

2. I designate S. Cody Reinberg, Kevin J. Dolley, HKM Employment Attorneys LLP, any attorneys they may designate, and the collective representatives to represent me in bringing this claim and to make decisions on my behalf concerning the litigation and settlement. I agree to be bound by any adjudication or settlement of this action by the Court, whether favorable or unfavorable.

Date: November 7, 2026

Signature: Alexander Robinson

Print Name: Alexander Robinson

**Information below will be redacted in filings with the Court. Please print or type.**

[redacted]